523 So.2d 1261 (1988)
Daniel QUILES, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1670.
District Court of Appeal of Florida, Second District.
April 27, 1988.
James Marion Moorman, Public Defender, and Paul C. Helm, Asst. Public Defender, Bartow, for appellant.
*1262 Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant, Daniel Quiles, was tried before a jury and was found guilty of two counts of aggravated assault with a firearm and one count of criminal mischief. The court entered judgment on the verdict and sentenced appellant to two concurrent three-year mandatory minimum terms on the aggravated assaults and time served on the criminal mischief conviction.
Appellant argues on appeal that the trial court committed reversible error when it allowed the state to introduce into evidence the prior consistent statement of the complaining witness, Rudy Heim, thus improperly bolstering Heim's credibility. Appellant also argues that the trial court committed reversible error when it allowed the state to improperly cross-examine a defense witness about charges that she had, on three prior occasions, struck a police officer. We agree with appellant and reverse as to both issues.
The events giving rise to these proceedings occurred on October 25, 1986. Heim and his wife, Debbie, were driving home from a party around 1:00 a.m. Heim testified that he had had a few drinks at the party. He was driving his 1986 Suzuki jeep. A few blocks from his house, appellant pulled out of a driveway directly in front of Heim. Heim pulled over and stopped to avoid a collision. Appellant also stopped. Heim and the people in appellant's car argued. Appellant drove back into his driveway and he and his passengers got out of the car and approached Heim. Heim exited the jeep. Appellant and a blonde girl rushed over yelling obscenities. Heim's wife handed him a baseball bat. The girl slapped and pushed Heim. She appeared intoxicated. Appellant also pushed Heim and acted like a mad man.
Heim testified that appellant ran into his house and returned with a gun. Appellant pointed the gun at Heim's head. Heim was frightened. He turned around and told appellant he would have to shoot him in the back. Heim pushed the girl aside and got in his jeep. Appellant ran to the other side of the jeep, pointed the gun at Mrs. Heim's head and said, "I'm going to kill you, bitch." Heim started his jeep. As he began to drive away, appellant kicked the passenger door, causing a large dent. As Heim drove away, he saw appellant fire the gun two or three times. None of the shots hit Heim's jeep.
Heim drove home and called the police. He walked back down to appellant's house, but appellant was gone. Heim spoke to some neighbors and returned home. He told the police what happened. On cross-examination, Heim said he only drank occasionally and had two mixed drinks at the party. Heim is 6'1" tall. The blonde girl was 5'10 or 5'11" tall. Heim denied shaking the bat in the girl's face and denied causing the altercation.
Debbie Heim corroborated her husband's testimony. She was not able to see what happened when appellant approached her husband after going inside for the gun. She was frightened when appellant approached her window with the gun and said he would kill her. Appellant kicked and dented the jeep door. She saw appellant fire two shots toward the car as they drove away. Neither shot hit the jeep.
On cross-examination, Mrs. Heim denied that her husband was a drinker. They did not keep beer or alcohol in their house. Her husband only had two drinks at the party and was not intoxicated. She denied having discussed her husband's drinking with him. She denied her husband threatened the girl with the bat and denied that he was responsible for the altercation.
Over defense counsel's hearsay objection, the court allowed Tampa Police Officer Robert Chandler to testify in detail about Heim's description of the altercation with appellant and the blonde girl. He said that Heim was upset, but did not appear to be intoxicated. Chandler examined Heim's jeep and observed a moderate-sized dent in the passenger's door. Heim did not tell Chandler about the baseball bat.
*1263 Tampa Police Officer Kathy Walker testified that appellant told her and Officer Dougherty that Heim got a bat from his jeep and appellant got a bat from his house. When Heim got in his jeep to leave, appellant kicked the door. Appellant denied having a gun. He owned one, but had pawned it earlier. The officers arrested appellant. Dougherty corroborated Walker's testimony.
Michelle Yung, seventeen, testified that she, Rene and Edwin Quiles were with appellant at his house that night. She, appellant and Rene each drank two beers. They left around midnight and as they were backing out, Heim pulled up and began hollering at them. He told them to pull over and get out of the car and they complied. Heim came out of his jeep with a baseball bat. Yung approached them and asked what was wrong. She told him to get back in his jeep and leave. She denied starting the altercation. Appellant walked to the other side of Heim's jeep. Heim waved the bat in her face. Heim was drunk. They argued and cursed at each other. She did not hit him. Appellant did not go into the house. He did not have a gun. Appellant got a bat from his car. She did not see appellant kick Heim's jeep. During cross-examination, the court overruled defense counsel's objection and permitted the prosecutor to question Yung about charges that she had, on three prior occasions, struck a police officer.
Edwin Quiles, appellant's brother, testified that when they backed out of the driveway, Heim pulled up and said he could have hit them. Heim was upset and appeared intoxicated. Heim got out of his jeep with a bat in his hand. Yung said she would talk to him. Heim and Yung argued. Heim was waving the bat. Yung did not touch Heim. Appellant said he would go tell the lady to take Heim away because he was drunk. Appellant got a bat, walked over to the jeep and started talking to the lady. Appellant kicked the door, Heim got in the jeep and drove away. Edwin did not know whether appellant owned a gun. Appellant did not have a weapon that night. He only had a bat.
Turning to appellant's first point on appeal, we agree with appellant and hold that Officer Chandler's in-court recitation of Heims' version of the events was inadmissible hearsay and was not admissible as an exception to the hearsay rule. §§ 90.801(2)(b), 90.803(1), 90.803(2), Fla. Stat. (1985).
The state relies on the proposition that an out-of-court statement offered for its truth is not hearsay if it is consistent with the declarant's other testimony and is "offered to rebut an express or implied charge against him of improper influence, motive, or recent fabrication." § 90.801(2)(b). To be admissible, however, the statement must have been made before the existence of a reason to falsify arose. Preston v. State, 470 So.2d 836, 837 (Fla. 2d DCA 1985). Here, Heim made the statements to Officer Chandler in the course of the police investigation of the incident. As in Lamb v. State, 357 So.2d 437 (Fla. 2d DCA 1978), the statements were made to police after they arrived and in response to the declarant's telephone call. The events of the crime had long since occurred and had terminated, giving Heim time to reflect. Id. at 439. Heim's statements to Officer Chandler were not admissible as nonhearsay.
Neither were they admissible as an exception to the rule against hearsay. A spontaneous statement or excited utterance "must have been made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance... ." Lyles v. State, 412 So.2d 458, 460 (Fla. 2d DCA 1982); § 90.803(1)(2), Fla. Stat. (1985). Again, Heim made his statements to Officer Chandler after the incident had occurred. He had gone home to call the police and had returned to the scene. Since Heim had the time and motive to falsify, his statements to Officer Chandler cannot be deemed exceptions to the rule against hearsay.
While the state argues that any error here is harmless, we disagree. This *1264 case was tried before a jury. The credibility of the witnesses was critical. The improper bolstering of Heim's credibility, especially by a police officer, could well have resulted in a miscarriage of justice. See § 59.041, Fla. Stat. (1985).
Appellant also argues that the court erred when it allowed the state to improperly cross-examine Yung about prior charges that she had struck a police officer. We agree here also.
First, it is not clear whether the charges against Yung had resulted in convictions. Since only convictions may be introduced and, then, only the fact of the conviction and the number of convictions may be shown, the cross-examination of Yung was improper. See Fulton v. State, 335 So.2d 280, 284 (Fla. 1976). Not only were the charges not presented as convictions, they were presented with far more specificity than is allowed for impeachment.
Again, in view of the fact that the credibility of witnesses here was critical, we believe that this error was not harmless. This witness' reputation for violence went to the heart of the issue of which side instigated the violence.
We therefore, reverse appellant's conviction and remand to the trial court for a new trial.
Reversed and remanded for a new trial.
SCHEB, A.C.J., and HALL, J., concur.