547 So.2d 1017 (1989)
James JENKINS, Appellant,
v.
STATE of Florida, Appellee.
No. BM-33.
District Court of Appeal of Florida, First District.
August 16, 1989.
*1019 Michael E. Allen, Public Defender, and Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
BARFIELD, Judge.
James Jenkins appeals from his conviction for trespass in an occupied structure, raising four issues for review. We hold that the trial court committed reversible error in allowing both the victim's mother and the investigating officer to relate, at trial, prior statements of the victim which were consistent with the victim's own trial testimony and served only to impermissibly bolster her credibility. We affirm the remaining issues and reverse and remand for new trial.
The victim lived alone with her five-year-old son in a trailer home in Lawty, Florida. According to her trial testimony, on May 22, 1985, at approximately 3:30 a.m., an intruder broke into her home, entered her bedroom, laid down beside her bed and began to fondle her breasts and thighs. She turned on the light at the foot of the bed and recognized appellant, whom she had known previously, having attended school with him. Appellant was wearing only his underwear and holding a hunting knife. She asked him, "James, what are you doing here," and he replied, "Don't tell anybody. This is between you and me." She told him to leave, and he left immediately. The next morning she went to her mother's house and told her what had occurred. She and her mother went to appellant's house and spoke with appellant's father about the incident.
Over appellant's hearsay objection,[1] the victim's mother testified that her daughter had told her that someone broke into her trailer, entered her bedroom and laid down beside her bed; that her son woke up and said he was scared; and, that she turned on the light and recognized appellant. The mother could not remember the exact date that her daughter came to her, stating that it was either a Friday or Saturday; nor could she recall the exact date that her daughter reported the incident to the police, stating that it was sometime that same week.
On May 25, 1985, the victim reported the incident to Bradford County Deputy Sheriff David Aderholt. Over appellant's hearsay objection, Aderholt testified as to the victim's description of the incident:
Q: What did she report to you had occurred?
A: She reported to me that on May 22nd at about three-thirty in the morning that she and her five-year-old son had been asleep in her bedroom and that she had heard a noise in her mobile home and that it had woke her up and that she was frightened, that she had heard the front door open and close several times. She stated that her son awoke and said he was scared and that she was scared and laid there and that someone came close to her bed and that she began to feel  she could feel them rubbing her on the inside on her thigh and also on her chest near her breasts, at which point she said that she turned on a light at the foot of her bed and that she saw the person, that she told the person to leave and that this person stated to them  told her not to tell anybody as this was between her and the person and that the person did leave at that time.
*1020 For the defense, appellant's father testified that appellant was living with him at the time of the incident. The victim and her mother came to see appellant's father and told him that appellant was found in the victim's trailer, wearing only his underwear and holding a hunting knife. The father stated that neither his son nor he owned a hunting knife, but that his son did own a pocket knife, which folded-out to 6-7 inches. Appellant's mother testified that on the night of the incident, she last saw appellant in the den watching television. She did not hear him leave the house during the night. Appellant testified that he was watching television and had fallen asleep at 11:30 p.m.. He denied that he had been in the victim's trailer.
Appellant pled not guilty to charges of armed burglary and battery. As to the armed burglary count, the jury found appellant guilty of the lesser included offense of trespass in an occupied structure. As to the battery count, the jury found him not guilty. His motion for new trial was denied. The court withheld imposition of sentence, placed appellant on probation for one year and ordered him to serve six months in the county jail or, alternatively, to be placed in residential treatment center for one year.
On appeal, appellant contends that the trial court erred in allowing the victim's mother and the investigating officer to testify as to statements the victim made to them regarding what had occurred on the night of the incident. Appellant argues that the statements were consistent with the victim's trial testimony and served only to bolster her credibility, in violation of section 90.801(2)(b), Florida Statutes. The state responds that the statements were admissible to show the victim's state of mind at the time she related the incident to her mother;[2] and, that because approximately three to four days elapsed before reporting the incident to the police, there was, perhaps, a basis for an implied charge of recent fabrication. Alternatively, the state contends that, even if the trial court erred, the error was harmless.
In general, prior consistent statements of a witness are inadmissible to corroborate or bolster the witness' trial testimony. Van Gallon v. State, 50 So.2d 882 (Fla. 1951); Jackson v. State, 498 So.2d 906 (Fla. 1986); McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982). However, under § 90.801(2)(b), prior consistent statements are not hearsay and can be used as substantive evidence, if the declarant testifies at trial, is subject to cross-examination regarding the prior statement, and the statement is offered to rebut an express or implied charge of improper influence, motive, or recent fabrication. A prior consistent statement admitted to rebut a charge of bias, corruption or improper motive must have been made "prior to the existence of a fact said to indicate bias, interest, corruption or other motive to falsify." McElveen, 415 So.2d at 748 (quoting, Kellam v. Thomas, 287 So.2d 733, 734 (Fla. 4th DCA 1974)). There must be an initial attempt on cross-examination to demonstrate the improper influence, motive or recent fabrication and, once such an attempt has successfully occurred, then prior consistent statements are admissible on the redirect examination or through subsequent witnesses to show the consistency of the witness' trial testimony. Wise v. State, 546 So.2d 1068 (Fla. 2d DCA 1989); Bianchi v. State, 528 So.2d 1309 (Fla. 2d DCA 1988). Admissibility of the prior statement is addressed to the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of that discretion. Kelley v. State, 486 So.2d 578, 583 (Fla. 1986), cert. den., Kelley v. Florida, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986).
On cross-examination, appellant's attorney attempted to impeach the victim's testimony through use of her deposition and generally attacked her credibility. For example, she testified at trial that the burglary *1021 occurred on May 22. However, in her deposition she stated that it happened sometime between May 12 and May 23. On cross-examination, she admitted that it most likely occurred on May 15. Additionally, at trial she testified that her son was awake and saw appellant when she turned on the light. However, in her deposition, she stated that her son was asleep at the time of appellant's entry into the bedroom. On cross-examination, she stated that it was not until after she gave the deposition that her son told her that he had seen appellant in the bedroom. Finally, appellant's attorney cross-examined the victim on reasons why she did not immediately go to any of the neighbors for help or to use a telephone (she did not have a phone in the trailer). The victim replied that she was scared and, instead, went to her mother's house the next day.
A reasonable interpretation of the victim's cross-examination does not indicate, either expressly or implicitly, a charge of recent fabrication, improper influence or motive to falsify. Her testimony did not indicate that she was changing her story at trial; nor did the impeachment attempts establish any fact which indicated that her trial testimony was improperly influenced or that she had a motive to falsify. A witness' credibility is always an issue at trial, and a general attack on that credibility does not satisfy the hearsay exception rule.
We find that the trial court abused its discretion in allowing the mother and the investigating officer to testify with respect to the victim's description of the incident. See Brown v. State, 344 So.2d 641 (Fla. 2d DCA 1977) (improper testimony of both investigating officer and victim's mother); Quiles v. State, 523 So.2d 1261 (Fla. 2d DCA 1988) (inadmissible hearsay testimony of officer who recited victim's version of events made in course of police investigation); Perez v. State, 371 So.2d 714 (Fla.2d DCA 1979) (officer's testimony that witness told him that defendant shot victim was consistent with witness' trial testimony and inadmissible); Lamb v. State, 357 So.2d 437 (Fla. 2d DCA 1978) (investigating officer's testimony as to victim's prior statement was consistent with victim's trial testimony and inadmissible). The prior statements of the victim were consistent with her trial testimony and served only to impermissibly bolster her credibility.
We reject the state's argument that the trial court's error was harmless. It is clear that the victim's testimony was critical in establishing appellant's presence in her home and, therefore, her credibility was crucial. Bianchi; Preston v. State, 470 So.2d 836 (Fla. 2d DCA 1985); McRae v. State, 383 So.2d 289 (Fla. 2d DCA 1980). Essentially, this case centers on the victim's word against appellant's alibi. As a result, we cannot conclude, beyond a reasonable doubt, that the error did not affect the jury's verdict. See generally, State v. Lee, 531 So.2d 133 (Fla. 1988) (reaffirming harmless error test enunciated in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986)). We reverse and remand for new trial.
The second issue on appeal concerns an alleged offer of money made to the victim's mother by appellant's father purportedly in exchange for not reporting the incident to the police. On direct examination, the victim's mother denied that she had asked appellant's father for money, stating that she went to see him only as a parent. Appellant's attorney objected to any further inquiry by the prosecutor regarding any offer of money. The trial court overruled the objection. The mother then testified that she first heard about an offer of money from appellant's attorney. The latter comment prompted a motion for mistrial by appellant's attorney. The trial court denied the motion and also denied appellant's motion to make a proffer out of the presence of the jury.
Appellant contends that the mother's testimony was irrelevant, highly prejudicial and hearsay; and, that the prosecutor's attempts to denigrate appellant's attorney in the presence of the jury was improper. Appellant also contends that the refusal to allow a proffer was reversible error. The state responds that appellant's conclusion that the jury was infected with some perception of bribery was not supported by the *1022 record and did meet the test of common sense. The state also asserts that appellant's attorney never revealed the nature of his proffer.
We agree with the state. The entire colloquy regarding the alleged offer of money was quite vague in substance and purpose and, even if the testimony was irrelevant or inadmissible hearsay, it did not appear so prejudicial so as to warrant a mistrial. Likewise, the reference to appellant's attorney did not appear to constitute a significant prosecutorial impropriety warranting a new trial. As a result, the trial court did not abuse its discretion in denying the motion for mistrial.
The third issue raised by appellant concerns whether the trial court erred in denying appellant's request to proffer the testimony of appellant's sister, who would have testified that on previous occasions she has seen the victim leave a local lounge in the company of men under circumstances which indicated that she might be going home with them. Appellant's attorney informed the court that he had first learned of the testimony on the morning of the trial. The trial court denied the motion, finding the proffer irrelevant.
In general, a trial court commits error if it denies a request to proffer testimony which is reasonably related to issues at trial. Kembro v. State, 346 So.2d 1083 (Fla. 1st DCA 1977); Piccirrillo v. State, 329 So.2d 46 (Fla. 1st DCA 1976). At trial and in his initial brief, appellant failed to demonstrate the relevancy of the proposed testimony. We conclude that the testimony was clearly irrelevant to any issue at trial. As a result, the trial court did not err in refusing to permit the proffer.
The final issue concerns whether the trial court erred in refusing to instruct the jury on trespass in an unoccupied structure as a necessarily included offense of burglary.[3] Appellant argues that trespass in a structure, whether occupied or not, is a category 1, necessarily included offense of burglary, according to the schedule of lesser included offenses; therefore, under Florida Rule of Criminal Procedure 3.510, the requested instruction was required. State v. Wimberly, 498 So.2d 929 (Fla. 1986). The state responds that the evidence did not support the requested instruction.
Appellant apparently relies on the former schedule of lesser included offenses which lists "Trespass  810.08(1) as to entering or remaining without authorization" as a category one, necessarily included offense of "Burglary  § 810.02." See Fla. Std.Jury Instr. (Crim.) (2d ed. Supp. Oct. 1985) at 264. Under category two, the former schedule lists attempts and then refers to the comment on enhancement. The comment equates enhancement statutes, such as the burglary statute, with the concept of lesser included offenses, suggesting that a jury should be allowed to return a verdict for a lesser degree offense without the enhancement. Id. at 257a. The comment concludes that because of the structure of the enhancement statute, there is no need to include lower degrees of enhanced offenses in the schedule of lesser included offenses. Id.
We do not find the 1985 schedule persuasive because it merely indicates that an offender who commits a simple burglary necessarily commits a simple trespass. The 1985 schedule fails to set forth the various burglary offenses which may or may not contain elements present in the trespass offenses. For example, burglary while armed, § 810.02(2)(b), may or may not include the elements of the structure being occupied or unoccupied, § 810.08(2)(a), (b); or, burglary with an assault or battery on a person, § 810.02(2)(a), may or may not include the use of a firearm or other dangerous weapon, § 810.02(3).
The 1985 schedule cites Rivers v. State, 307 So.2d 826 (Fla. 1st DCA 1975), as direct authority, and Mobley v. State, 327 So.2d 900 (Fla. 3d DCA 1976), as contrary authority. However, Rivers does not stand for the proposition that trespass is a necessarily *1023 included offense of burglary. In Rivers, this court affirmed the trial court's refusal to instruct on trespass because the defendant's attorney failed to advise the trial court of the specific trespass statute upon which he sought the instruction, and the trespass statutes cited to the court on appeal were not supported by the facts of that case. 307 So.2d at 828. In Mobley, the court expressly stated that it was "unaware of any authority holding that trespass is a necessarily included offense in the offense of breaking and entering." 327 So.2d at 902.[4]
The current schedule, as amended in 1987,[5] appears to have corrected the incompleteness of the former schedule. The 1987 schedule specifically lists each of the trespass offenses as "category two" lesser included offenses of the various burglary offenses. In fact, under the previous standards established in Brown v. State, 206 So.2d 377 (Fla. 1968),[6] caselaw has treated trespass as a "category four" lesser included offense of burglary. See B.D. v. State, 412 So.2d 70 (Fla. 1st DCA 1982); Macek v. State, 409 So.2d 107 (Fla. 4th DCA 1982); Mobley. In light of the above authority and the fact that the burglary and trespass statutes have remained unchanged since 1985, we conclude that trespass is not a necessarily included offense of burglary. Under rule 3.510(b), it is within the trial court's discretion to instruct on a lesser offense not necessarily included in the crime charged. See State v. Wimberly. We hold that the trial court did not abuse its discretion in instructing the jury on trespass in an occupied structure and refusing to instruct on trespass in an unoccupied structure, as the evidence clearly did not support the latter instruction.
We AFFIRM in part and REVERSE in part and REMAND for new trial.
NIMMONS, J., concurs.
ERVIN, J., concurs in part and dissents in part, with written opinion.
ERVIN, Judge, concurs in part and dissents in part.
I concur in all issues decided by the majority except Issue IV, relating to the failure of the trial court to instruct the jury on trespass of an unoccupied structure as a necessarily lesser included offense to that of armed burglary. I agree that the evidence clearly showed that at the time of the crimes' occurrences, the structure was occupied; hence, if one looks solely to the language of Florida Rule of Criminal Procedure 3.510(b), precluding a trial court from instructing the jury on any lesser offense unsupported by the evidence, the court's decision below in refusing to so instruct would obviously be justified.
Nevertheless, as pointed out in the majority's opinion, at the time of the commission of the offenses, the former schedule of lesser included offenses had listed trespass of an unoccupied structure as a necessarily included offense to that of armed burglary. Because the requested offense was so listed, the trial court, in my judgment, had no discretion to deny the instruction. See State v. Wimberly, 498 So.2d 929, 932 (Fla. 1986), stating: "The trial judge has no discretion in whether to instruct the jury on a necessarily lesser included offense. Once the judge determines that the offense is a *1024 necessarily lesser included offense, an instruction must be given." Earlier, in In re Use By the Trial Courts of the Standard Jury Instructions in Criminal Cases, 431 So.2d 594, 597 (Fla.) modified, 431 So.2d 599 (1981), the court made the following comment regarding the trial court's use of the schedule of lesser included offenses:
The schedule of lesser included offenses is designed to be as complete a listing as possible for each criminal offense of the possible category 3 and category 4 lesser included offenses, which we direct to be renumbered category 1 and category 2. After its effective date of July 1, 1981, this schedule will be an authoritative compilation upon which a trial judge should be able to confidently rely.
I would therefore also reverse as to this issue.
NOTES
[1] Prior to trial, appellant moved in limine to prevent the victim's mother from testifying as to prior consistent statements of the victim, arguing that the testimony was hearsay and would serve only to bolster the victim's testimony. The court denied the motion, ruling that appellant could object to the testimony at the proper time.
[2] The "state of mind" exception to the hearsay rule requires that the declarant's state of mind be at issue or be offered to prove or explain acts of subsequent conduct. Section 90.803(3)(a), Fla. Stat. (1985). Neither requirement is satisfied in this case. Thus, this exception to the hearsay rule does not apply.
[3] The trial court gave the standard jury instructions on burglary, trespass in an occupied structure and battery.
[4] But see, Williams v. State, 461 So.2d 1010 (Fla. 5th DCA 1984), in which the court held that trespass was a necessarily included offense of burglary, relying on the former schedule of lesser included offenses.
[5] Florida Standard Jury Instructions in Criminal Cases (2d Ed., Supp. May, 1987) at 271. The Florida Bar Re: Standard Jury Instructions  Criminal, 508 So.2d 1221 (Fla. 1987).
[6] In Brown, the supreme court established four categories of lesser included offenses: (1) degrees, (2) attempts, (3) necessarily included offenses, and (4) offenses which may or may not be lesser included offenses, depending on the accusatory pleading and the evidence. In 1981, the court adopted the recommendation of the Standard Jury Instructions Committee and consolidated the four categories into two categories: (1) necessarily included offenses, and (2) offenses which may or may not be included in the offense charged, depending on the accusatory pleading and the evidence, which included degrees and attempts. In the Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla. 1981), modified, 431 So.2d 599 (Fla. 1981).